ESTATE OF RAMOS v. DÍAZ CANEJA.

APPEAL from the District Court of San Juan.

No. 8.—Decided June 29, 1906.

CONTRACTS—PROCEEDINGS BEFORE EXPERTS—EVIDENCE.—Although a judge may disregard the testimony of experts, he is bound by such testimony when the findings of said experts is the result of an agreement between the parties, and any judgment changing or modifying such findings is in violation of the law of contracts.

ID.—EFFECTS OF DECISIONS RECORDED IN PROCEEDINGS BEFORE EXPERTS—RES ADJUDICATA.—Where the parties have agreed to submit their differences to the decision of experts such decision is not only binding but it constitutes *res adjudicata* in so far as the parties thereto are concerned.

CONVEYANCE OF PROPERTY INVOLVED IN LITIGATION—ENTRY OF NOTICE OF COMPLAINT—CANCELLATION OF RECORD OF CONVEYANCE.—Where during the progress of a suit concerning property, the ownership of which it is sought to establish by an action of which a cautionary notice has been entered, the cancellation of the record of such conveyance may be obtained by the presentation of a certified copy of the final judgment declaring the ownership to be in the plaintiff.

ID.—CONVERSION OF ENTRY CAUTIONARY NOTICE INTO RECORD OF OWNERSHIP.—Where a cautionary notice of an action is entered in the registry of property, and the complaint therein seeking to establish the ownership to a property is sustained, such entry must be converted into a record of ownership, and the record will be effective from the date of the entry of' the notice.

The facts are stated in the opinion.

*Mr. Cuevillas* for appellant.

*Mr. Manuel F. Rossy* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

On February 27, 1885, Rev. Manuel Díaz Caneja instituted an interdict against Antonio Ramos to retain the possession of 50 *cuerdas* of land of an estate belonging to him called "Pueblo Viejo," situated in the municipal district of Bayamón, and adjoining another estate called "San Patricio," belonging to Antonio Ramos, and situated in the municipal district of Rio Piedras, both estates being bounded by Margarita

Creek; and after the necessary investigation in accordance with the Law of Civil Procedure then in force, the parties were called to an oral trial which was held on April 15 of the same year, at which, at the suggestion of the judge of the cathedral district of this city, who was taking cognizance of the matter, both parties agreed to compromise their differences under the following terms:

"Antonio Ramos and Manuel Díaz Caneja agree to submit the differences which have given rise to this question to the decision of expert geometricians and that the latter prepare their decision aided by persons who have long been acquainted with the locality. Armando Morales is appointed by Manuel Díaz Caneja for this purpose, and Tulio Larrínaga by Antonio Ramos; and it is noted that each party reserves the right to appoint another expert in the event that the persons above designated for any reason should not accept the appointment. It is also agreed that in the event of disagreement between the experts appointed, a third expert, to be selected from among the residents of this capital, shall be appointed by the judge to settle the differences, and he shall be selected by lot from among those holding a proper diploma after the citation of the interested persons to attend the act."

The point which the decision of the experts is to cover is the following:

"They shall determine the real natural course of Margarita Creek as the real dividing line between the estates of Pueblo Viejo and San Patricio, for which purpose they shall consider the documents submitted to them by the parties and the statements of the persons acquainted with the land presented by such interested parties, including the documents of record in this interdict.

"It is further agreed that if the expert opinion should finally show a different course from that along which Margarita Creek now runs or that the course is to the east of Seboruco del Rey, Ramos shall pay the costs incurred, or which may be incurred until the determination of this matter, and in the event that said experts should find the course to the west of said Seboruco del Rey, then the costs incurred or which may be incurred to the final termination of this matter, shall be defrayed by Manuel Díaz Caneja."

The judge approved the agreement of the parties, and ordered that it be carried out.

Expert Armando Morales, appointed by Manuel Díaz Caneja, presented his opinion on April 1, 1886, summarizing it as follows:

"The undersigned does not find a single argument which inclines him to fix the natural course of Margarita Creek along the channel in which it now runs (April 1, 1886)—that is to say, to the west of Seboruco del Rey—and finds them all, without exception, favorable and convincing that the location of said course is to the east of said Seboruco—that is to say along the so-called Charco de las Yaguazas, and Margarita Caño."

Expert Juan Bautista Rodríguez, who had, by designation of Antonio Ramos, taken the place of Tulio Larrínaga, appointed in the agreement, presented his opinion on May 10 of said year 1886, with the proper plan, the opinion closing as follows:

"Therefore, as a conclusion of all that I have stated, it is my opinion that the real natural course of Margarita Creek follows the course described herewith:

"1. From its junction with Pontezuela Creek to the point marked G in the plan, the channel along which it now runs.

"2. From said point G along an old channel marked in the plan by the line GH, and along the land through a strip of sand to the west of said Seboruco del Rey.

"3. From point H of this strip to the source T of the creek now known by the name of Caño del Seboruco del Rey the waters formerly ran without a fixed channel, more or less disseminating, in the middle of a swamp, now drained by the opening of a large number of ditches. The almost perfectly level character of the land does not permit the line which the waters should now follow from one to the other of the points mentioned to be fixed exactly, the line indicated on the plan with the letters HST being that least advantageous to the San Patricio plantation of all those which could be established; and,

"4. From the source of the Caño del Seboruco del Rey the present bed of the latter, to the outlet in Puerto Nuevo River."

As will be observed, Expert Rodríguez, in contradiction of the other expert, Morales, fixes the course of Margarita Creek to the west of Seboruco del Rey.

In view of the disagreement of the two experts, Díaz Caneja and Ramos, at the suggestion of the latter, agreed that Lieutenant Colonel of Engineers, Mariano Sichar, attached to the office of the Chief. of Public Works, should be appointed the third expert to settle the disagreement, and after accepting said office, Sichar presented his opinion on October 7, 1886, his general and final conclusion being the following:

"The course of Margarita Creek is, according to science, observation and the antecedents, the same along which it now runs reaching and continuing between the isolated Seboruco to the northeast of the mountains of Pueblo Viejo to the eastern end thereof and said mountains, or what is the same thing, to the west of the so-called Seboruco del Rey. That as stated in the third and fourth conclusions the land to the east of the Seboruco has increased in height and has changed the course of the waters towards the meadow of Pueblo Viejo Abajo, for which reason the waters run and must run next to the mountains of Pueblo' Viejo in that direction, leaving the said Seboruco to the east."

Rodríguez and Sichar agreed in locating the course of Margarita Creek to the west of Seboruco del Rey, and not to the east, as Morales decided.

The judge, holding the matter to have been determined by the report of the third expert, dismissed the claim of Manuel Díaz Caneja relating to said expert proceedings and rendered judgment on October 16, 1886, dismissing the interdict instituted by Manuel Díaz Caneja without prejudice, taxing the costs against him and reserving to him the right to exercise any action of ownership which he might have under the law.

From this judgment counsel for Manuel Díaz Caneja took an appeal to the *Territorial Audiencia,* also alleging that the proceedings had after the oral trial were null; and said court decided the appeal by judgment of July 17, 1888, which we transcribe below, omitting the results had in the proceedings in the lower court, because we have already set them forth:

"The record having been received, the parties having entered an appearance, the relator having prepared the abstract, the proper pro-

ceedings having been had, and the 9th and following days of this month (July, 1898) having been set for the hearing, said hearing was had on the 9th and 10th instant with the attendance of the solicitors and counsel, the respective prayers of counsel being made at said proceedings. The said prayers, as certified by the clerk of the court, were as follows: That of Attorney Hilario Cuevillas, the appellant, on behalf of Rev. Manuel Díaz Caneja, that the judgment rendered by the inferior court be reversed and that matters revert to the state in which they were when the experts were appointed, either to permit the appointment of others to carry out the agreement made, or that without such appointment the interdict follow its usual course; that in any case this superior court make a new examination of the estates of Ramos and Caneja, complying with the provisions of the law and the agreement of the parties, and that by virtue of such new examination the interdict to retain possession be held to lie, with the costs against Antonio Ramos; and, finally, that the protest, filed in the court and accepted by the judge, that the proceedings were null, is renewed because the oral trial and subsequent proceedings were null and he prayed that the said nullity be first declared. Attorney José S. Quiñones prayed on behalf of Antonio Ramos 'that the survey of Margarita Creek made by the third expert, Mariano Sichar, be approved, and the parties adjudged to abide thereby forever, and to respect the line drawn in blue ink upon the plan by said expert, which represents the true natural course of the creek as the real natural division between the estates of Pueblo Viejo Abajo and San Patricio, with the costs of both instances against Manuel Díaz Caneja, or if this should not lie, that the judgment appealed from be affirmed with the costs.'

''The judge has not observed the provisions of law in force during the prosecution of the interdict, because in the oral trial conducted according to the provisions of article 714 of the former law, instead of complying with the following articles 715 to 717, he sought to have the parties compromise, and after the compromise had been agreed on he continued proceedings upon the compromise (folios 46 to 173, reverse side) until he rendered judgment in the interdict.

''According to the former Law of Civil Procedure, under which these proceedings were conducted, without the parties making the slightest objection, as well as by the modern law in force, the purpose of possessory interdicts is merely to decide questions relating to possession, and it is not possible to treat of or decide therein any other point than the point of the investigation which precedes it, for which reason both laws in articles 691 and 709 to 719 of the former and sec-

tions 1626 and 1649 to 1656 of the latter prescribe a special procedure, of a brief and summary character, absolutely foreign to any other question, to the extent of specifically determining the cases in which such proceedings may be brought, the requisites which must be observed, the form to be followed in their hearing and determination, and the only two declarations to which the judgment rendered must be confined in the form also determined.

"In view of the express and specific terms of this provision of the law, whether the interdict be allowed or dismissed, the judgment must contain the formula of 'without prejudice to third persons and reserving to the parties the right they may have to the ownership or final possession, which they may enforce in the proper action;' it is indisputable that from the moment the interdict extends to any other question, whatever it may be, it ceases to be such in law, and all that remains to be done is to dismiss it at once, reserving to the parties their rights to be enforced in the proper manner and form.

"Any action, whatever stage it may have reached, may be terminated by mutual agreement and compromise of the parties interested therein, and, therefore, the plaintiff, Díaz Caneja, and the defendant, Ramos, in having agreed at the oral trial (folio 46), to compromise their differences in the form and under terms therein set forth, the reason for the interdict ceased to exist, and the judge should therefore have closed said proceeding by dismissing it, as he could no longer render judgment containing the only two declarations which it could contain, on account of the lack of the essential matter necessary upon which to found it, *i. e.*, the pleadings of the parties, the evidence and the testimony of witnesses.

"Rev. Manuel Díaz Caneja having accepted the agreement entered into with Ramos, after the compromise it contains having produced its effects and the results thereof having also been accepted by subsequent acts, he is estopped from denying his own acts, and especially from asking for the annulment of his own acts, because it is a general principle of law, sanctioned by numerous decisions of the Supreme Court, that it is not lawful for anyone to deny his free and voluntary acts.

"The protest that the proceedings had from the oral trial on were null, embodied in the supplemental prayer of the appeal by counsel for Caneja, renewed at the hearing and extended to include the oral trial, is in open contradiction to the acts of said party and even to the claims of his counsel, in view of the fact that having accepted the agreement contained in the act, the annulment of which he seeks, he prays that it be considered effective for the appointment of new

experts or the extension of acts performed as a consequence thereof; for which reason, as protests produce no other result than those that may be proper in law, as a protest does not lie in the case at bar, and no action to that end having been taken it cannot produce the effect of a protest, especially when no defect whatsoever exists which would cause annulment.

"The new Law of Civil Procedure being in force when this appeal was taken, the proceedings must be governed thereby in accordance with the provisions of article 2 of the Royal Decree of October 27, 1885, for its application in this Island.

"According to article 372 of the Law of Civil Procedure in force, *audiencias* shall see that the provisions of article 371 are promptly complied with, and shall admonish and impose the proper disciplinary correction.

"The judge of first instance of the Cathedral district, in causing the parties at the oral trial to compromise or to come to an agreement has violated the rules of legal procedure in the action; he has also done so in giving judicial approval to the agreement because the functions looking to the settlement of differences are limited to municipal judges, the functions of judges of first instance being confined to hearing and determining according to law, but never extend to giving their approval to other acts not expressly provided for in the laws.

"In view of the legal provisions cited we adjudge that, reversing the judgment appealed from, we should dismiss, as we do dismiss, the interdict to retain possession and hold that it terminated by the express will of the parties, to whom are reserved the rights which they may have under the compromise entered into between them, without any special taxation of costs; and it is ordered that Judge Manuel Suárez Valdez be admonished to observe strictly the provisions of law in force in the hearing and determination of actions as well as in the celebration of acts thereunder. Thus by this our judgment do we pronounce, order and sign.—Ricardo Maya; Juan F. Ramos; Antonio Mojarrieta."

While the appeal taken by Manuel Díaz Caneja from the judgment which had been rendered upon the interdict to retain possession on October 16, 1886, by the court of the Cathedral district was still against Manuel Díaz Caneja to recover the possession of the land of the San Patricio Estate belong-

ing to him, adjoining other lands of the estate of Pueblo Viejo, belonging to Díaz Caneja, and the interdict having been dismissed by order of April 10, 1888, and a rehearing having been denied by another order of the 16th of the same month, the *Territorial Audiencia* in taking cognizance of the matter on appeal rendered the following judgment which bears the same date as that rendered by the same court upon the interdict to retain possession:

"In the City of San Juan Bautista de Puerto Rico, July 17, 1888, in the matter of the interdict to recover the possession of a tract of land, instituted in the Court of First Instance of the Cathedral district by Antonio Ramos y Mencos, a resident of Río Piedras, a landowner, represented by Solicitor Tomás Caballero and directed by Attorney José S. Quiñones against Rev. Manuel Díaz Caneja. These proceedings are pending before us by virtue of an appeal taken by Ramos from the order of April 10 last which dismissed the interdict in the form in which it is brought.

"Judge Manuel F. Ramos delivered the opinion of the court.

"Solicitor Tomás Caballero, in the name of and holding a proper power of attorney from Antonio Ramos y Mencos filed a complaint in interdict against Rev. Manuel Díaz Caneja to recover certain land situated between their respective estates, San Patricio and Pueblo Viejo Abajo, instituting proceedings for the purpose in the court of the Cathedral district, at that time in existence. The judge of said court, by order of April 10 last (folio 19) dismissed the interdict on the ground that this interdict to recover is sought to be exercised against another interdict to retain possession which is pending on appeal instituted by Rev. Manuel Díaz Caneja against Antonio Ramos, involving the same land.

"An application for a rehearing having been made and a subsidiary appeal taken from said order, judgment was rendered on the 16th of the said month (folio 22) in which, on the same grounds as the previous judgment and invoking the decisions of the Supreme Court of June 14, 1859, and February 5, 1870, and considering furthermore that the decision of the interdict to retain possession involving the same possession and the same estate, having been submitted to the jurisdiction of the court of justice, no other act can be allowed tending to evade the effect of such appeal, the rehearing is denied

and the appeal subsidiarily taken is admitted both for review and a stay of proceedings.

"The appeal having been allowed, the record having been admitted and received by this *audiencia*, the abstract having been made and the proper legal proceedings having been had, the trial was held on the 4th instant set for the purpose, with the attendance of the solicitor and the argument of José S. Quiñones.

"An order in furtherance of justice having issued, there was made part of the record a certified copy of the entire record of the oral trial held in the interdict to retain possession to which reference has been made, and it appears therefrom that upon the oral trial which the law prescribes in cases of interdict to recover possession (should read retain possession) being held, which proceedings were pending between Ramos and Díaz Caneja and involved the same lands, they agreed to settle their differences by submitting to the decision of geometrical experts in the form and under terms therein set forth.

"The legal provisions have been observed in the prosecution of this action.

"The persons being the same, the object the same, the action the same, and the thing also the same, and the latter having been submitted by the express will of the parties to the result of a compromise agreement entered into between them, the singular action brought cannot be established in law nor can it be sustained, by reason of the fact that a cause of action is lacking, according to the express and specific terms of the law relating to the propriety and proceedings of interdicts to retain or to recover possession. (Articles 1649 *et seq.*)

"The existence of the compromise agreement between the plaintiff and the person against whom he seeks to direct an interdict to recover upon the same possessions the motive and subject of the compromise having been established, the parties thereto are bound by such compromise agreement and may exercise their rights in the proper action, manner and form, and they cannot exercise the actions derived from such compromise in any other way, thus complying with the provisions of law 34, title 14, *partida* 5, and the decisions of the Supreme Court of Justice of October 6, 1857, April 30, 1864, November 12, 1867, and November 25, 1871, which give it the force of a legal truth and *res adjudicata*, producing all its legal effects in the absence of proof of fraud or bad faith.

"In view of the legal provisions cited and law 1, title 1, book 10, of the *Novísima Recopilación*, we should dismiss, and we do dismiss, the interdict instituted by counsel for Antonio Ramos against Manuel

Díaz Caneja under the compromise entered into between them, reserving to them the rights that such compromise grants them, in which terms, we affirm the order of April 10, 1888, appealed from, and the concordant order of the 16th of the same month, with costs against the appellant. Thus by this our judgment do we pronounce, order and sign.—Ricardo Maya; Juan F. Ramos; Antonio M. Mojarrieta.''

Under the circumstances, on December 26, 1889, Antonio Ramos filed a complaint against Rev. Manuel Díaz Caneja alleging as the fundamental grounds thereof the compromise agreement entered into between them April 15, 1885, in the interdict to retain possession referred to, the expert report which in compliance with this agreement, the umpire Mariano Sichar presented, whose decision was binding upon both parties, the judgment rendered by the *Territorial Audiencia* upon the interdict to retain possession under date of June 17, 1888, which validated said agreement and its results, the other judgment also rendered on the same date by the said *Territorial Audiencia* which based its decision on the existence of such compromise agreement, and, finally, the seizure made on February 13, 1888, by Manuel Díaz Caneja, who not only took possession of the 30 *cuerdas* of land to which his interdict to retain possession referred, but of 25 or 30 *cuerdas* more to the pool of Las Yaguazas which his expert Morales had designated as the real natural course of Margarita Creek; that is to say about 80 *cuerdas* of land more or less, situated on the dividing line between the Estate of San Patricio and the farm of Pueblo Viejo Abajo belonging to Caneja, between Margarita Creek along its natural course to the west of Seboruco del Rey, which Experts Rodríguez and Sichar laid down in their reports, the river of Puerto Nuevo, the row of *emajagua* trees which separates the lands of San Patricio from the land belonging to the Estate of Arroyo and the pool of Las Yaguazas, in its two extensions to the said row of *emajagua* trees and the river, along the line which Expert Morales gives in his plan as the natural course of said creek, and which, according to

experts, Rodríguez and Sichar, is absolutely absurd and arbitrary.

Ramos concluded his complaint with the prayer that in due time Díaz Caneja be adjudged to abide by the survey of Margarita Creek made by the third expert, Mariano Sichar, as the real dividing line between the San Patricio Estate and the farm of Pueblo Viejo Abajo, and that, consequently, the tract or area of land consisting of 80 *cuerdas* more or less above described, be adjudged to be the property of the plaintiff, and in the event that such declaration of ownership should not lie, 'that he be declared to be entitled to the possession thereof, and that in either case Father Caneja be adjudged to make restitution of the fruits produced or which such land should have produced from February 13, 1888, when he forcibly deprived Ramos of the possession thereof, to restore the course of Margarita Creek back to the channel along which it ran at the time of the institution of the interdict—that is to say, to the west of Seboruco del Rey—to indemnify any loss and damage, and to pay the past and future costs to the termination of the litigation.

In answering the complaint, Manuel Díaz Caneja prayed for a declaration of: (1) The nullity of the agreement made on April 15, 1885, in the oral trial of the interdict to retain possession brought by him against Antonio Ramos; (2) The annulment of all proceedings subsequent to said agreement, including the reports of the experts and every judicial decision expressly or impliedly invoked by Antonio Ramos in affirming or maintaining the validity of such agreement; (3) The lack of jurisdiction of the ordinary courts by reason of the subject matter and the principle *ejus est condere cujus est tollere,* to fix or modify the jurisdictional limits of the towns of Bayamón and Río Piedras defined by the course of Margarita Creek which is also the boundary of the estates of Pueblo Viejo and San Patricio belonging to the litigants and that recourse be had to the public administration to reestablish or define the course of said creek; (4) The impropriety

of exercising a real action of ownership and the right to possession derived from a void agreement, against one who is neither the owner nor the actual possessor of the Pueblo Viejo Estate, on account of his having sold it to Eduardo González Caneja by public deed of January 4, 1890; and (5) The impropriety of the change in the course of Margarita Creek requested by the plaintiff, as also the impropriety of the delivery of fruits and indemnity for loss and damage, and consequently adjudging Antonio Ramos to perpetual silence and to pay the costs; and having filed a cross-complaint he prayed that it also be held that Manuel Díaz Caneja has possessed the Estate of Pueblo Viejo on the jurisdictional boundary of the towns of Bayamón and Río Piedras, ratified by the surveys made in 1883 in the presence and with the agreement of Ramos and Díaz Caneja, and that, therefore, as the latter has held possession within the jurisdiction of Bayamón according to its boundaries, he has properly and justly possessed the tract of land which Ramos disputes, and that, having disturbed Díaz Caneja in the enjoyment of said possession and forced him to incur heavy expenses and costs, he has proceeded contrary to law and should indemnify him for the damages and pay all past and future costs which may arise in connection with the cross-complaint. /

Antonio Ramos in his replication renewed the prayers he had made in his complaint, and prayed in addition that it be held that the deed of sale of January 4, 1890, executed by Manuel Díaz Caneja in favor of his nephew and superintendent (Eduardo González Caneja), five days after he had been cited and summoned for the trial, was null and void in so far as it related to the land under discussion, if, as a matter of fact, the sale did include the Estate of Pueblo Viejo, and that said deed cannot produce any effects in favor of Father Caneja to the end of diverting said land from the effects of the judgment which may be rendered, or without prejudice to the rights of the purchaser who may enforce such rights at the

time and in the manner he may deem proper, and that, furthermore, the cross-complaint filed by Díaz Caneja be dismissed with the costs against him.

Díaz Caneja upon making his rejoinder renewed the final prayer of his answer in every respect and requested as did the plaintiff, that evidence be taken in the action.

The evidence submitted by both parties, as ordered by the court below having been heard, the District Court of San Juan rendered judgment on July 29, 1900, the conclusions of law and adjudging portion of which read as follows:

"The compromise agreement between Díaz Caneja and Ramos in the interdict which the former instituted against the latter is valid and must be performed as should any obligation actually contracted by parties, it not being permissible for either of them to vary or annul it to the prejudice of the other.

"The expert proceedings to which the parties submitted their differences, is reasonably convincing that the present course of Margarita Creek is the dividing line between the estates of San Patricio and Pueblo Viejo Abajo.

"Even though said compromise between Ramos and Díaz Caneja were not enforceable in law, the documentary evidence, the testimony of the experts and of the witnesses heard in this action are convincing beyond doubt that said line is that indicated and that the parties must conform thereto with regard to the ownership and possession of their respective estates, it being evident that the land of which Díaz Caneja took possession belongs to the San Patricio Estate, the property of Ramos.

"With regard to the cross-complaint, while the tendency of the allegations and evidence of Díaz Caneja in this action has been to show that the boundary drawn in 1883 to divide the jurisdictions of Río Piedras and Bayamón affected only the Estate of Pueblo Viejo Arriba de Los Arroyos with regard to a question relating to taxes exclusively, he could not validly maintain that he held possession in accordance with such boundary, especially so when all the proceedings show conclusively that said imaginary boundary was not that chosen in the proceeding to fix a boundary or that it was the one really dividing the respective properties of Ramos and Caneja.

"Questions of ownership related to the boundaries of estates, and matters of a civil character and under the jurisdiction of the courts,

and can never be submitted to the decision of administrative authorities, who have the power only to establish the limits of territorial jurisdictions for purely administrative purposes, but never to take away from or grant to private individuals the rights they may have to the ownership of a tract of land and its boundaries and demarcation.

"One who takes possession of a thing without reason or right, must make restitution thereof with its fruits and the damages which he may have caused in taking possession thereof.

"For the purposes of the return to Ramos of the land which Caneja took from him, it is not necessary to annul the deed which the latter executed upon selling his Estate of Pueblo Viejo Abajo, because Ramos recorded his complaint in the registry of property for the purpose of protecting his rights.

"Díaz Caneja in personally fixing one of the boundaries of his estate and taking possession of land without awaiting in either case the decision of the courts, inasmuch as both were disputed by his adjoining owner, thus making a judicial declaration necessary to determine who was in the right, has proceeded with recklessness and bad faith which entail as a consequence the taxation of costs.

"In view of the laws, rules and jurisprudence cited by the parties in their complaint, answer, replication and rejoinder, the transitory provisions and the titles on contracts of the Civil Code and General Order No 118, we adjudge that, sustaining the complaint and dismissing the cross-complaint, we should adjudge, and we do adjudge, Manuel Díaz Caneja to respect as the dividing line between the estates of Pueblo Viejo Abajo and San Patricio the natural course of Margarita Creek along which it ran before the institution of the interdict to which channel it must be restored—that is to say, from the north end of the row of *emajagua* trees along the line between the Seboruco of Malatierra and that of Seboruco del Rey, on the western side of the latter, which belongs to San Patricio, towards Pajonal where the waters are disseminated and then run into the Puerto Nuevo River—and that Díaz Caneja return to Ramos, now his estate, the land which he seized, estimated at 80 *cuerdas*, situated between the natural course of the creek, the Seboruco del Rey, Río Puerto Nuevo, the row of *emajagua* trees and the Las Yaguazas pond, which lands the plaintiff formerly possessed, and the boundaries of which are set forth in the record of the registry of property, and the fruits produced and which it should have produced since February 14, 1888, and to pay all the costs. Thus, by this our judgment, do we pronounce, order and sign.—Angel Acosta; Juan Hernández López; Felipe Cuchí."

From this judgment counsel for Manuel Díaz Caneja took an appeal in cassation for error of procedure and violation of law, and the former having been dismissed by the Supreme Court on March 1, 1902, the latter was prosecuted in accordance with the provisions of the former Law of Civil Procedure. But while its decision was pending, the Act of the Legislative Assembly of March 12, 1903, went into ·effect, for which reason said appeal was prosecuted according to the procedure prescribed in said act which established this Supreme Court as a court of appeals and it is to be noted that counsel for Díaz Caneja having moved that evidence should be taken in this second instance, his motion was denied and the appeal was heard, at which hearing counsel for both parties made their respective arguments and were granted a period of thirty days for the presentation of briefs which was done by counsel for the appellant, but has not as yet been done by counsel for the respondent.

Counsel for Manuel Díaz Caneja admits in his brief that the determination or establishment of the course of Margarita Creek as the boundary between the adjoining estates of San Patricio, belonging to Ramos, and Pueblo Viejo, belonging to Díaz Caneja, entails a question of real ownership which in this action involves no less than 80 *cuerdas* of land; and he also admits the legal value of the compromise agreement entered into between both parties on April 15, 1885, at the oral trial of the interdict to retain possession brought by Díaz Caneja against Ramos, as it was on such grounds that the *Territorial Audiencia* dismissed the interdict and held it to have terminated by the express will of the parties, reserving to them the rights which they had under said compromise agreement.

Counsel for Díaz Caneja alleges that after the judgment of the *Territorial Audiencia* of July 17, 1888, which contained the above declaration, matters reverted to the state in which they were when the agreement was signed, that said agreement

and the right of the parties to enforce its execution only remained, and that thus the reports made by the experts were null and void; but we cannot agree with this construction, and on the contrary we maintain that the reports made by Experts Armando Morales, Juan Bautista Rodríguez and Mariano Sichar are valid and effective in law, inasmuch as said experts were appointed voluntarily and exercised their functions without opposition from the parties, who are estopped by their own acts, as said *Territorial Audiencia* stated in its aforementioned judgment, holding that Díaz Caneja could not, as he did, seek a declaration annulling the oral action and subsequent proceedings of the interdict. The only thing which in our opinion can be discussed now is whether there has or has not been a real expert decision, which is to serve as a guide to the parties for the settlement of the differences which they submitted to expert proceedings.

This decision did really exist from the moment that Expert Armando Morales fixed the natural course of Margarita Creek to the east of Seboruco del Rey, and Juan Bautista Rodríguez located it to the west, the third expert, Mariano Sichar, came to settle the difference, deciding in favor of Rodríguez, thus deciding not only the question of possession at issue in the interdict to retain possession, but also the question of ownership, inasmuch as a boundary of the estates of San Patricio and Pueblo Viejo belonging to Ramos and Díaz Caneja, respectively, was involved.

This expert decision cannot be objected to on the ground that Rodríguez and Sichar did not confine themselves to the documents and antecedents which they should have examined, because they are under the obligation of submitting thereto by virtue of the agreement they entered into for the purpose of putting an end to their differences, and the judicial authorities must accept such decision in now defining the rights of Ramos and Díaz Caneja.

Article 631 of the former Law of Civil Procedure prescribes that judges and courts shall consider the expert

testimony according to the rules of sound judgment, without being obliged to subject themselves to the opinion of the experts; but this provision is not applicable to this case in which not expert testimony but an expert trial is involved, derived from an agreement, as the Supreme Court of Spain has held in its decision of October 30, 1878, which reads as follows:

"Although the judge need not observe the reports of the experts when the expert proceedings are in the form of a means of proof, he is under the obligation on the contrary to conform thereto when it is the result of an agreement, and if he ignores it, a judgment changing or modifying the expert findings to which the parties submitted, violates the doctrine announced and the law of contracts."

Counsel for Díaz Caneja himself recognizes said doctrine in his brief in saying:

"Does a compromise exist? It does. Has that compromise the force of *res adjudicata*? It is so held in the adjudging portion of the judgment of July 17, 1888, and it is also so provided by the law, article 1816 of the Civil Code in force when the agreement was entered into and said judgment was rendered, and section 1717 of the Civil Code now in force, which provided that a compromise has with regard to the parties, the same authority as *res adjudicata*.

"A judgment and authority of *res adjudicata*. Then any petition other than one for the execution of this compromise in the form agreed on should and must be dismissed on account of a manifest violation of *res adjudicata*.

"Therefore in this action no depositions of witnesses nor evidence of any other character is admissible, excepting a new examination by experts whose report must be rendered in view of the documents presented by the parties and nothing else."

It matters little that Experts Rodríguez and Sichar, agreeing as they do that the natural course of Margarita Creek is located to the west of Seboruco del Rey, do not agree upon some details, because it was the intention of Ramos and Díaz Caneja to settle their differences by the decision of experts

upon the points they themselves indicated, and consequently the opinion of the third expert had to be the deciding one, and it was not necessary that such opinion should coincide with that of one of the other experts appointed. Had an absolute agreement of two experts been necessary, Ramos and Días Caneja were exposed to not having their differences settled by the expert proceedings, as was the intention of both when they entered into the agreement.

This new expert testimony was proposed, as evidence in this action, by Manuel Díaz Caneja, with the protest of Antonio Ramos, and Experts Antonio Alonzo Herrero, Gerónimo Giménez and Arturo Guerra, appointed by the judge on account of lack of agreement of the parties, the two first named agreed with the opinion of Armando Morales in the interdict to retain possession and the third with Experts Rodríguez and Sichar as to the course of Margarita Creek being located to the west of Seboruco del Rey.

Nevertheless, as it is our opinion that the expert decision of Mariano Sichar in the interdict to retain possession is conclusive because it executes a compromise agreement entered into between Ramos and Díaz Caneja, without said decision containing any defect entailing nullity, we understand that it was unnecessary to hold the new expert proceedings which were conducted, not in the form prescribed by the parties, but with the formalities prescribed by the former Law of Civil Procedure, and, therefore, it cannot be considered as the execution of an agreement which was duly executed by opinions rendered by experts duly appointed in the interdict to retain possession, where Expert Sichar gave his decision that, as we have stated, settles the differences between Ramos and Díaz Caneja as to the boundaries of their respective land.

The second expert proceedings are not binding either upon the parties or upon the judicial authorities, which conditions are present in the first proceedings because they were the result of an agreement.

But there is still more; and that is that it has been proved

in this case by the testimony of a number of witnesses that on February 13, 1888, when the appeal taken by Díaz Caneja from the judgment of the Court of First Instance of the Cathedral district, in the interdict to retain possession, of October 16, 1886, was still pending in the *Territorial Audiencia,* Ramos was deprived by Díaz Caneja, with the assistance of the civil guard, of about 80 *cuerdas* of land which had become his property according to the report of Expert Morales, which property is the same the ownership and possession of which are now the subject of dispute in this action.

*"Spoliatus debet ante omnia restitui,"* said the Romans, and this judicial principle or axiom which should have served as a basis for the interdict to recover possession brought by Ramos against Díaz Caneja and which was not applied because in the opinion of the *Territorial Audiencia* the compromise agreement to which Ramos and Díaz Caneja had submitted their differences was an obstacle thereto, it must be applied in this action in which Ramos has requested the execution of the expert decision rendered in the interdict to retain possession, which has the same authority for both parties as *res adjudicata.*

It does not matter that Díaz Caneja sold to Eduardo González Caneja, by public deed of January 4, 1890—that is to say, five days after having been summoned to make answer to the complaint—the Estate of Pueblo Viejo, because a cautionary notice of said complaint was entered in the registry of property, and such notice must produce the effects prescribed by the Mortgage Law without prejudicing the rights of Antonio Ramos. Such effects are those established in the fifth paragraph of article 71 of the Mortgage Law, which reads as follows:

"If the conveyance executed and recorded during the pendency of the suit relates to an estate, the ownership of which is demanded by virtue of a complaint, a cautionary notice of which has been made in accordance with subdivision 1 of article 42 of this law, a certified copy of the final judgment in favor of the ownership of the plaintiff

shall be a valid title deed by virtue of which this record may be canceled.''

Furthermore, article 142 of the Regulations for the execution of said law provides that a cautionary notice may be converted into a record when the person in whose favor it has been created definitely acquires the right entered; so that if the claim of ownership brought by Ramos against Díaz Caneja is admitted, which claim has been entered in the registry of property, such notice must be converted into a record of ownership, and according to article 70 of the said law such record produces its effects from the date of the cautionary notice.

The sale of the land claimed made by Díaz Caneja in favor of Eduardo González Caneja cannot prejudice the plaintiff, Antonio Ramos, from the moment that the latter's complaint was entered in the registry of property, because such notice had necessarily to affect any subsequent record of ownership of said Estate.

In support of this doctrine we have the decision of the General Directorate of Registries of Property of September 10, 1881.

It matters not that Margarita Creek forms the boundary between the jurisdictions of the towns of Bayamón and Río Piedras. The question now at issue between the parties involving the boundary of their respective lands is of a civil character and under the jurisdiction of the ordinary courts, and the public administration has no right to interfere therein, although it has the power to define and establish the boundaries of the jurisdiction of towns without prejudice to the private rights of individuals.

For these reasons we hold that the judgment appealed from should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Justices Figueras, MacLeary and Wolf concurred.

Mr. Chief Justice Quiñones did not sit at the hearing of this case.